CJF8.7.20



U.S. Department of Justice

*United States Attorney*
*District of Maryland*

Christine Goo  
Assistant United States Attorney  
Christine.Goo@usdoj.gov  

Mailing Address  
36 S. Charles Street, 4th Floor  
Baltimore, MD 21201  

Office Location  
36 S. Charles Street, 4th Floor  
Baltimore, MD 21201  

DIRECT: 410-209-4924  
MAIN: 410-209-4800  
FAX: 410-962-3124

August 7, 2020

James Dennis Murphy, Jr., Esq.
Murphy and Price LLP
5700 Coastal Highway Ste. 305
Ocean City, MD 21842

Re:   United States v. Davonte Drummond,
       Criminal No. CCB-18-0220

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Davonte Drummond (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 21, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges the Defendant with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. That on or about December 6, 2017, in the District of Maryland, the Defendant knowingly possessed a firearm, as that term is defined in 18 U.S.C. § 921(a)(3);

   b. That prior to December 6, 2017, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, and his civil rights had not been restored;

   c. That prior to December 6, 2017, the Defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

Rev. August 2018

d.  That the firearm affected interstate commerce because it was manufactured outside of the State of Maryland.

### Penalties

3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

**Natural Penalties**

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | N/A | 10 years | 3 years | $250,000 | $100 |

**Armed Career Criminal Penalties**

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | 15 years | Life | 3 years | $250,000 | $100 |

a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

**Natural Guidelines**

    a. This Office and the Defendant agree that the applicable base offense level starts at 24 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(2) because the defendant committed the instant offense after sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.

### Armed Career Criminal Guidelines

        b.      This Office believes that U.S.S.G. § 4B1.4 applies because the Defendant is an armed career criminal and the resulting offense level is greater than that determined under U.S.S.G. § 2K2.1. Therefore, the applicable base offense level increases to 33 pursuant to U.S.S.G. § 4B1.4(b)(3)(B). The Defendant does not agree with this increase.

        c.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. The final offense level is either 30 or 21.

        7.      The parties agree to the Defendant's criminal history as determined by the Pre-Plea Criminal History Report dated April 24, 2019. Accordingly, the Defendant's natural criminal history category is VI. Pursuant to U.S.S.G. § 4B1.4(c)(1), the criminal history category remains VI because this Office believes the Defendant is an armed career criminal, his natural criminal history category is greater than the one provided in subsection (c)(3), and subsection (c)(2) does not apply.

        8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

        9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **180 months of imprisonment** (if the Defendant is an armed career criminal) or **120 months of imprisonment** (if the Defendant is not an armed career criminal) in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that

if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10. At the time of sentencing, this Office shall recommend a sentence of **180 months of imprisonment** (if the Defendant is an armed career criminal) or **120 months of imprisonment** (if the Defendant is not an armed career criminal), as described above. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i. The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 180 months; and

        ii. This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 120 months.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a Kel-Tec P3AT .380 caliber, semi-automatic pistol bearing serial number KZH16 and three rounds of Federal .380 caliber ammunition.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____ /CG

Christine Goo
Brandon Moore
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/18/2020
Date

Davonte Drummond

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/18/2020
Date

James Dennis Murphy, Jr., Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

During 2017, the Federal Bureau of Investigation ("FBI") was conducting a wiretap investigation into drug trafficking activity in Baltimore, Maryland. On December 4, 2017, investigators obtained authorization to intercept phone calls over Defendant Davonte Drummond's cellphone. By December 6, 2017, investigators intercepted calls leading them to believe that the Defendant was armed with a firearm.

The first call happened at 5:29 p.m. The Defendant called Person 1 and discussed meeting at a recreation center. The Defendant told Person 1, "I want you to be right there when I holla at this little nigga that looked at my phone yesterday." He continued, "I'm right here standing on the corner. I got the what's a name in my pocket." Person 1 agreed to meet the Defendant and said that he was walking down Madison Avenue. Investigators believed "what's a name" referred to a firearm. Concerned the Defendant was looking for someone while armed with a firearm, investigators started tracking the Defendant by using the information discussed in the calls and the location information they were receiving from the Defendant's cellphone.

Over two more calls, both at 6:52 p.m., the Defendant told Person 2 that he was "in the top building," on his way to the gym. Person 2 replied, "Hurry up dummy with the strap." A few moments later, Person 2 told the Defendant that "some niggas was just chasing Larry and them from the store." The Defendant asked if "Larry" was at the gym or the store, then said he was about to head down Madison Avenue. Investigators believed "strap" referred to a firearm and that the Defendant, again, was coordinating to meet someone while armed.

By now, investigators suspected that the Defendant was heading to the Crispus Attucks Recreation Center—a recreation center on Madison Avenue with a gym, consistent with the information given over the calls. They communicated their suspicions to officers with the Baltimore Police Department ("BPD"), who responded to Crispus Attucks. When the BPD officers arrived, they saw the Defendant running from the gym to an adjacent hallway. The officers chased him down the hallway, stopped him, and recovered a Kel Tec P3AT .380 caliber semi-automatic pistol bearing serial number KHZ16, loaded with 3 rounds of .380 caliber ammunition, from his jacket pocket. During the final intercepted call, made at 7:01 p.m. from inside Crispus Attucks, the FBI investigators heard the Defendant using more coded language to refer to his firearm ("what's a name" and "mileage"). They also heard the Defendant being arrested.

Prior to possessing the firearm, the Defendant had been convicted of a crime punishable by more than one year's imprisonment, and his civil rights had not been restored. The Defendant knew that he had been previously convicted of a crime punishable by more than one year's imprisonment. The firearm was not manufactured in Maryland. Therefore, it traveled in and

Rev. August 2018

affected interstate commerce prior to its recovery in Maryland. The firearm was examined and found to be capable of expelling a projectile by the action of an explosive and therefore is a firearm as that term is defined in 18 U.S.C. § 921(a)(3). All of these events took place in Maryland.

SO STIPULATED:

/CG
Christine Goo
Brandon Moore
Assistant United States Attorneys


Davonte Drummond
Defendant


James Dennis Murphy, Jr., Esq.
Counsel for Defendant